Good afternoon, Ariel Stern on behalf of Rushmore Loan Management Services. The Bankruptcy Court should not have awarded the Moons an attorney fee motion because the Moons did not incur and will not incur any personal obligation to pay their attorney, Mr. Burke. For that reason, they have not suffered any actual damages under Section 362K, making the award of attorneys fees improper. How do you square that with the Schwartz-Tallard case, which tells us that Section 362K-1 is a fee-shifting statute? Schwartz-Tallard is consistent with our position, and the key language from the opinion we think to start off this discussion is where it observes that it's, in its words, these are not our words, but the court's words in Schwartz-Tallard, an unusual statute. The reason it's unusual is for a couple of reasons. It, on its own terms, limits itself to instances where the attorney's fees and costs are a subset of actual damages. That's just the way the statute reads. It allows the recovery of actual damages, including attorney's fees and costs. So by its own language, it's limiting in that manner. Let me ask you, can I ask you a question now? Suppose there were an agreement between an attorney and a client that says the client will pay over to the attorney any amount awarded and collected as attorney's fees. Would that solve your problem? Would that make it within the statute as you interpret it? If I understood the question correctly, I don't think it does, because as you worded it, that would assume a traditional fee-shifting statute in which the prevailing party, regardless of which party prevails, is the one that benefits under the statute, and it's simply within the discretion of the court to determine what a reasonable fee is and in its discretion apply it. Let me restate it a little bit. I'm suggesting that the agreement would say client promises to pay the attorney whatever amount of attorney's fees the court awards. Would that give enough personal liability on the client to support the actual damages claim in your view? I think in that circumstance the award of attorney's fees would be based on a contingency that would not rise to what I think in other cases have been deemed in an actual contingency fee agreement to constitute actual damages, and I think the reason why a contract worded in that manner would not quite get over the limitations set forth in the statute is that it doesn't at any point obligate the debtor to, as a personal matter, to pay the attorney's fees. If a contract worded in that manner, and I'm just trying to think if there would be any way in which the debtor would be harmed, and I don't think that's the case. In contrast to a traditional contingency agreement where, let's say just for the sake of argument, there's an award of $100,000 of damages, and then the attorney is entitled to 40% of that under a contingency fee, that is, I think pretty straightforward, a damage that the borrower incurs. Rather than taking home $100,000, they're only taking home 60. But in the example that you presented, Judge, I think what would happen is the borrower would keep the $100,000, and then there would be a fee practice motion, motion practice, and whatever additional amounts would be awarded would then be given to the attorney, and I think in that scenario. Maybe they wouldn't. Oftentimes it's in favor of the client. You rely on the client to pay it over to the attorney. I mean, because the client is the one who would get the award often. I'm sorry, Judge Brian, I couldn't quite hear you. I said the client is the one who gets the award technically, and they have to pay it to the lawyer. Here we have a situation where the debtors didn't have an explicit agreement, but what they had was a statement that they understood that part of your request was an award of attorney's fees to the lawyer, and if that happened, they understood that the lawyer would then be paid. Now, why is it not enough? I think the distinction is in the Boone's own testimony, as they explained it. They never had even a discussion. You mentioned, Judge, an express or an explicit agreement. They didn't even have an implied agreement. It was pretty understood. The agreement that, incidentally, Mr. Burke, in his briefing, does not dispute this. The agreement, to the extent that you can call it one, is that the Boones wouldn't have to worry at all about it. It would be the bankruptcy court, at the conclusion of the case, that would be charged with compensating. The problem with that is that under the statute, as worded, this never rises to the level of actual damages. It doesn't materially or pecuniarily put the Boones in a worse position than they would have been without that, and that's, I think, the key distinction. Can I ask you a question? Because I feel sort of angels dancing on the head of a pen happening here. So we have an order that your client, the bankruptcy court found your client, violated an order, and we know that because this is a consumer case, there's a mandate under one statute to give them certain money. Isn't there a 105 element here? I mean, if the trustee, for example, doesn't have that mandate to pay, but the trustee can go in and say, hey, this was inappropriate. I had to retain counsel, pay them. Is it different if we're looking at it, getting you outside your 362 language and just looking at generally an award of attorney's fees? Yes. So I think, Judge Taylor, you're talking about the inherent powers to penalize civil contempt under section 105. And I get that's not what he did, but I'm just going to the high level. I thought I'd ask. Sure. I think conceptually what we're looking at here is a distinction, a demarcation point in time prior to and subsequent to the automatic stay, lifting after the discharge. And the reason that 105 is inapplicable prior to that point in time is that there is a specific statute that's on point, and that is 362K. And as you noted, that's what they invoked. But in addition to that, it's simply a different legal analysis. In the 105 context, we're looking at contempt. And there has to be a showing of actual notice and contempt, whereas in the 362K. There was a showing of actual notice. I mean, let's be honest. I don't think there's any question your client had notice. I'd like to push back on that just a little bit, Judge Taylor, because there was no, and in fact the bankruptcy court determined that there was no notice, or at least no notice proven with respect to the discharge injunction. That's a discharge injunction. I'm talking about the stay. I get the point that there's a statute on point, but to say they didn't have notice of the automatic stay is. And that was not what I intended to say. We argued about that in the last argument, and certainly for purposes of today we won't dispute that the court found what it found with respect to the automatic stay, but I think there is a congressional statute that codified what Congress intended to do in terms of compensating. And so our position would be that section 105 is simply not available there when you have a more specific on target statutory provision that addresses this. And, of course, you have the subsequent consideration. I think the court understands that in this case the relief that was sought and that was granted was under 362K. And part of what we're asking the court to remedy here is that in kind of a opposite to the scenario that you just presented, what we actually had was the awarding of or the failure to disaggregate attorney's fees and awarding some post-discharge injunction work that Ms. Burke did under 362K. And we have, I think, a little bit of the opposite problem as the case presents here. But what I'd like to emphasize is that we understand that the congressional intent as interpreted by Schwartz-Tallard favors compensation of debtors when they incur attorney's fees as part of their actual damages. But as far as we explain in our briefing, the cases, we're not aware of cases at the circuit level that have addressed this issue, but the majority view among the bankruptcy court cases that we discuss in our briefing is that this is a distinction that does matter. And in those instances where the debtor does not have an expectation to be personally liable. I want to ask you about that. I think it seems to me that under your view, debtors would have to make an agreement with the lawyer unconditionally agreeing to pay a reasonable fee to the lawyer for this litigation. I think that's the implication of your position. But everybody knows, well, in this case, I think it's pretty clear that the Moons had no hope of actually performing that agreement, right? They had no way to afford a reasonable fee for this kind of case. And I suspect that's probably true for the vast majority of Discharge Chapter 7 debtors. So doesn't your position kind of require attorneys and clients to enter into agreements with kind of a nudge and a wink that they know is never going to be really performed unless there's an award of fees? I don't think that's the case simply because there is, in practice, the availability of the contingency fee, which in practical terms is essentially what I think the Moons and Mr. Burke were hoping to enter into. Well, why would a contingency fee work under your point of view? Because the client is not personally liable for the contingency fee, right? No, but under a contingency fee, the client stands to lose part of the recovery as a percentage of the fee award. So if, for example, It works for you because it means the attorney's fees are a trivial amount because usually the actual damages are a trivial amount. Not in this case, but in many cases they're trivial. Or even if, in this case, even if we assume, as was the case in this case, that they're a significant amount, in a contingency context, the recovery comes out of the debtor's pocket. I think that's the distinction I'm trying to emphasize here is if the court awards $100,000 in compensatory damages, as it did here, and $40,000 of that is taken out of that recovery to pay the attorney's fees, the debtor is $40,000 short of the award. And that's why a contingency fee has been held to be under the scope of $362K, whereas what was done here essentially was not a contingency fee, but rather that under what would traditionally be a prevailing party concept that the court would award additional fees to the attorney. And so it's from the perspective of the moons that we have to look at this, the moons, regardless of what happens with this motion, will never be worse off. If Mr. Burke gets paid or if Mr. Burke doesn't get paid, the court doesn't have to intervene to redress any damage on the part of the moons because they will never be at risk of having any part of their recovery threatened by this. And this, I think, is... I guess I don't see why that's a good thing. You know, it's okay to award attorney's fees as long as it reduces the amount, as long as it makes sure the debtor will not actually recover their actual damages. I mean, I just don't understand that. I think the point is that attorney's fees are necessary in the contingency context so that the debtor can recover the entirety of their damage, whereas in the situation we have here, because there was never a contingency fee or any other type of agreement, the debtors are never going to be in a position where they're going to be worse off. They don't have that personal liability. I think the position that the moons take or that Mr. Burke takes would work if the statute read as a prevailing party statute, but it doesn't. It requires, and my final minute here before I reserve for rebuttal, I would just point out that the other courts in the federal bankruptcy level, bankruptcy courts that have addressed this have recognized that this is the way the statute reads. It's different than your traditional fee-shifting statutes, and this is simply the way that Congress enacted the statute, and so as a final thought we would. I have to stop you because you're actually into your reserve time. The time is the total 20 minutes. Thank you. I'll be back in 15 minutes. All right. Thank you. All right, counsel. Mr. Burke. Good afternoon. Christopher Burke, hearing service. Please support. Ironically, two years ago, almost to the day, two people came in my office. They were elderly, sickly, minorities, and they were distraught. For the prior six years, they had been harassed with collection calls and letters. They had contacted their attorney, who had apparently done nothing. They had contacted Rushmore, who apparently didn't stop, and they were beside themselves. If I had said to them, okay, I'll take this case, I think you have a case, but if we lose, it's probably going to cost $5,000 to $10,000 in expenses and $50,000 in attorney's fees, what would they have done? They would have left, and they still probably would be receiving calls and letters. That's the point of 362. I think Congress got it and the Ninth Circuit got it, and Swartz-Tallard specifically says people who cannot afford to hire private counsel. Rushmore would love it to say that the moons would have to pay me no matter what because it would frighten them away from doing anything. Fortunately, well, for them, I did not do that. I told them if we don't win, they won't owe me. If that was wrong, if the statute doesn't cover that, then I assume they'll reverse it. But I think it's a hard stretch to argue that this statute is not meant to protect debtors. In terms of a contingency fee, that would take away from their actual damages. The court said these are your actual damages. Now, if they have to pay them over to the attorney, that takes away from actual damages. So, in this particular case, I would ask that the court affirm the Bankruptcy Court. And unless there's questions, I'll just briefly address my cross-appeal. Well, tell me about the fact that the judge just awarded the discharge injunction fees as part of the fees. The judge didn't make any effort to, and neither did you, segregate the fees between the automatic stay violation and the discharge injunction violation. Right. I cited a couple of cases like Hensley, the Supreme Court case. It says in the cases in my brief that as long as you prevail on a substantial issue, and they're all interrelated, you do not have to break down every little hour that was spent on each case. But don't you have to do something? I mean, doesn't there at least have to be an affirmative determination that you can't untangle it? I mean, I'm concerned by the notion that you don't even have to articulate that. Because there were two issues here, and you lost on one and you won on the other. Well, I would differ with your characterization as lost. The judge said they violated the discharge injunction. Did he find them in contempt? They violated by clear and convincing evidence, but because I can't find what day it started. Correct. He didn't find them in contempt. But these issues were so interrelated. The only difference was the date that the discharge entered as to whether or not the actions by the creditor were the same. The calls and the letters were consistent. And then I would argue, how would we even differentiate? We're arguing the same facts and evidence, and it's just as to the time period involved. We weren't arguing two distinct issues. Did you make that argument before the bankruptcy court? I wasn't required to. The bankruptcy court actually didn't even require me to set it for motion. It said, file an affidavit or declaration and your billing hours, and they can oppose it and you can respond. But I did file it by motion because I figured there would be a dispute and that oral argument might be helpful. Unfortunately, the oral argument was pretty simple. The judge said I've read everything and make a couple of points. So, no, I did not argue that or differentiate. Can you argue that they waived the issue? I believe their opposition brought it up. Okay. And so, I think they're so interrelated that the facts that using a different statute wouldn't differentiate on the award. Now, of course, if this panel or the panel that heard Moon won, would you agree with my argument that the stay continued? And that you could pick a date for the discharge violation, then perhaps that would play into this. Other than that, are there any other questions as to Rushmore's appeal? No. Cross appeal, I'll be brief. I understand the judge did not want to award an enhancement fee. My point is this, twofold. One, there were other factors the court could have considered but didn't. I don't think the fact that whether another attorney would take the case should have been dispositive of the issue. If the court went through each of the other factors, delay in payment, outlay of expenses, then I don't think he abused his discretion. The problem I have and why I asked for a remand is I don't think those were considered and I think they needed to be considered. And the second reason is for a future. What is it that's needed if an attorney were to request enhancement fees? And so, that's the twofold point of my cross appeal. Are there any questions on the cross appeal? No. No. Judge Byrne? No. And I would just ask that the appeal by Rushmore get affirmed and the cross appeal get remanded. Thank you. Thank you. All right. Mr. Stern, you have a whole minute and a second. Plenty of time. Thank you, Your Honor. So, I'm going to address the discharge injunction and the overlap. Two points are important there for emphasis today. This is all in our briefs. First of all, they're governed by different statutes that are markedly different in the standards they set forth. Under 362K, as we've argued, there is an actual damages component. Under 105A, there's a civil contempt component that requires clear and convincing evidence. And the Bankruptcy Court found that that wasn't met, as was just conceded. The problem we had, of course, is that there was no attempt to segregate, no attempt to desegregate. And the Bankruptcy Court had taken a substantial amount of evidence, had seen motions, briefings, a lot of things on the discharge injunction that just did not factor in. And so, on that basis, that was there. All right. Thank you very much for your good arguments. This matter will be deemed submitted. Thank you. Thank you. Thank you.
judges: Taylor, Faris, Brand